UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFF WILLIAM HURLEY,

      Petitioner,

v.

STEVE RIVARD,

      Respondent.

Case No. 12-15140
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

---

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

---

Petitioner Jeff Hurley seeks a writ of habeas corpus. Hurley is currently serving a sentence of seven to twenty two years imprisonment resulting from his Wexford Circuit Court convictions for resisting and obstructing a police officer, Mich. Comp. Laws § 750.81(d)(1), operating a motor vehicle while intoxicated, Mich. Comp. Laws § 257.624a, carrying a concealed weapon, Mich. Comp. Laws § 750.227, felon in possession of firearm, Mich. Comp. Laws § 750.224f, and felony-firearm, Mich. Comp. Laws § 750.227b. Hurley claims that he was denied the effective assistance of counsel when his attorney failed to seek a stipulation as to the existence of a prior felony, resulting in the prosecution presenting evidence of a prior conviction for obstruction of justice, and when his attorney failed to object to the prosecutor's cross-examination of Petitioner regarding his failure to tell his version of the events to the police. He also claims that the trial court improperly scored his sentencing guidelines. Having reviewed Hurley's petition, the warden's response, and the state-court record, the Court finds that the state courts reasonably concluded that Hurley's claims were without merit. Hurley's petition, therefore, is DENIED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Hurley's convictions arise from a November 20, 2009 shooting, and his interactions with police in the aftermath of that shooting, in Wexford County, Michigan. According to the trial testimony, Hurley and his friend Joshua Baldwin had been drinking with friends at Baldwin's mother's house when the group went to Wal-Mart, where Baldwin purchased a box of .45 caliber ammunition. The group continued to drink at the house of another friend, Tamitha Simmons. Hurley and Baldwin began playing with a .45 caliber pistol which Hurley had retrieved from a white van. At some point after this, Baldwin sustained a gunshot wound to his left leg.

Baldwin testified that he had no recollection of how the injury occurred. Hurley testified that he was in the drive-thru at McDonald's when an unnamed passenger in the van received a phone call that Baldwin had shot himself. Other witnesses, Justin Coutu and Theresa O'Farrell, testified that Hurley told them the shooting occurred at McDonald's. They testified that Hurley was pounding on O'Farrell's door looking for a licensed driver to take his friend who had been shot to the hospital. Coutu drove Baldwin to the hospital. Hurley went with them and helped bring Baldwin inside the emergency room around 3:48am. Security camera footage showed Hurley running out of the hospital at 3:50am.

Having received calls from neighbors regarding gunshots and from the hospital regarding a victim with a gun-shot wound, Cadillac police began patrolling the area in search of the white van. They encountered Hurley driving the van and activated their overhead lights. The officers testified that after Hurley stopped the van, he was uncooperative and combative, ignoring instructions to walk backwards toward the officers and to turn around and get on the ground. He also attempted to bring his hands to the front of his body while handcuffed. When Hurley refused to submit to a Breathalyzer test, the officers obtained a search warrant and took him to the

hospital to be tested. While at the hospital, he spat at an officer, had to be held down for a photograph, and was eventually returned to the police car. Tests showed that his blood alcohol level was .13. The jury also saw video footage of Hurley from security cameras at the traffic stop, hospital, and Wal-Mart.

As noted, the jury ultimately convicted Hurley of resisting and obstructing a police officer, Mich. Comp. Laws § 750.81(d)(1), operating a motor vehicle while intoxicated, Mich. Comp. Laws § 257.624a, carrying a concealed weapon, Mich. Comp. Laws § 750.227, felon in possession of firearm, Mich. Comp. Laws § 750.224f, and felony-firearm, Mich. Comp. Laws § 750.227b. He was sentenced, as a fourth habitual offender, Mich. Comp. Law § 769.12, to forty-six to 180 months on the resisting and obstructing conviction, to be served concurrently with ninety-three days on the operating while intoxicated conviction, and a consecutive sentence of thirty-six to 240 months on the felon in possession of a firearm conviction, to be served concurrently with sixty to 240 months on the concealed weapon conviction, and twenty-four months on the felony firearm conviction. (Sentencing Tr. at 29–30.)

After sentencing, Hurley filed an appeal in the Michigan Court of Appeals on the following grounds:

> I. Defense trial counsel was constitutionally ineffective in failing to offer to stipulate to an undisclosed felony conviction for the charge of felon in possession of firearm rather than permitting the prosecutor to introduce appellant's conviction for obstructing justice which was unfairly prejudicial and similar to the resisting and obstructing charge in the present case.

> II. Defense trial counsel was constitutionally ineffective in failing to object to the prosecutor's eliciting on cross-examination that appellant did not previously tell the police his stor[y], where appellant had exercised Miranda rights following arrest.

> III. The trial court improperly scored ov-3 and ov-19 of the sentencing guidelines, and due process requires resentencing, where an eyewitness sustained a self-inflicted gunshot wound that did not result from appellant's alleged possession of

the gun; and where appellant's resisting and obstructing the officers in arresting appellant had already allegedly disposed of the gun involved in the felon in possession and carrying and concealing charges.

(Dkt. 8-7, Mich. Ct. App. Proceedings, at 9.)

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Hurley*, 2011 WL 2739453, at *5. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application in a one-sentence order because it was "not persuaded that the questions presented should be reviewed" by the Court. *People v. Hurley*, 490 Mich. 914 (2011) (table). Hurley subsequently filed his petition for writ of habeas corpus on November 20, 2012. (Dkt. 1.) He seeks habeas relief on the same three grounds he raised in his appeal to the Michigan Court of Appeals. (*See id.*)

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs this case, "circumscribe[s]" the standard of review that federal courts apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

4

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision is "certainly contrary" to federal law where the "state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.* at 406.[1]

A state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (*citing Williams*, 529 U.S. at 407–08). The Supreme Court has emphasized that "'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 785 (2011) (quoting *Williams*, 529 U.S. at 410). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

---

[1] The Court is aware that U.S.C. § 2254(e)(1) provides "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." But where, as here, § 2254(d)(2) applies, the interplay between §§ 2254(d)(2) and (e)(1) is unsettled. *See Wood v. Allen*, 558 U.S. 290, 293 (2010) ("We granted certiorari to address the relationship between §§ 2254(d)(2) and (e)(1). We conclude, however, that the state court's factual determination was reasonable even under petitioner's reading of § 2254(d)(2), and therefore we need not address that provision's relationship to § 2254(e)(1)."); *Rice v. White*, 660 F.3d 242, 254 (6th Cir. 2011) ("It is an open question whether 28 U.S.C. § 2254(e)(1) . . . applies in every case presenting a challenge under § 2254(d)(2)." (internal quotation marks omitted)); *Murray v. Schriro*, 745 F.3d 984, 1001 (9th Cir. 2014) ("Since [*Kesser v. Cambra*, 465 F.3d 351 (9th Cir. 2006)], our panel decisions appear to be in a state of confusion as to whether § 2254(d)(2) or (e)(1), or both, applies to AEDPA review of state-court factual findings."). Because it does not affect the outcome, the Court will assume, without deciding, that only § 2254(d)(2) applies.

## III. ANALYSIS

### A. Ineffective Assistance of Counsel Claims

Petitioner raises two alleged instances of ineffective assistance of trial counsel. First, he claims that his counsel should have offered to stipulate to the existence of a prior felony conviction for obstruction of justice so as to have avoided the prosecution introducing evidence that allegedly prejudiced the jury. More specifically, during jury selection, the trial court informed the potential jurors that:

> The information in this case charges the defendant . . . did in Count Number 1 possess or transport a firearm when ineligible to do so because he or she had been convicted of obstruction of justice, a felony punishable by imprisonment of four or more years and the requirements for regaining eligibility had not been met.

(Dkt. 1, Pet. at 13.) Second, Petitioner claims that his counsel should have objected to the prosecutor's question during cross examination as to why Petitioner failed to tell his version of the night's events to the police. Respondent asserts that both claims were reasonably rejected by the state courts.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-prong test to determine whether a habeas petitioner has received ineffective assistance of counsel. First, the petitioner must prove that counsel's performance was deficient, meaning that counsel made errors so serious that he or she was not "functioning as the 'counsel' guaranteed the criminal defendant by the Sixth Amendment." *Id.* at 687. Second, the petitioner must establish that counsel's "deficient performance prejudiced the defense," meaning that counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

6

To succeed on the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. Indeed, the reviewing court must "indulge a strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 689–90. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id*. In other words, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

"When a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel . . . [Supreme Court precedent] require[s] that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *accord Harrington*, 131 S.Ct. at 788 ("The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal citation omitted)). Thus, the question is whether the state court unreasonably concluded that counsel's actions were reasonable and/or not prejudicial.

### 1.  Counsel's Failure to Stipulate

The Michigan Court of Appeals rejected Petitioner's first allegation on the merits as follows:

> We hold that defendant has failed to overcome the presumption that defense counsel's conduct amounted to sound trial strategy. After conferring with defendant, defense counsel did not object to the submission of defendant's record of conviction on a charge of obstruction of justice. While defendant is correct that this is similar to the resisting and obstructing charge at issue here, in light of defendant's extensive criminal record and the gun charges in this case, it was reasonable for counsel to disclose the nature of the predicate felony rather than allow the jury to speculate about whether defendant's prior conviction may have involved firearms or violence. Moreover, defendant cannot show that, absent this decision, the result of the proceedings would have been different. The reference to defendant's prior conviction was brief and ample evidence established that defendant had the firearm in his possession and that he resisted and obstructed the police officers during his arrest.

*Hurley*, 2011 WL 2739453, at *3.

This decision did not result in an objectively unreasonable application of the *Strickland* standard. As the state court noted, a mere stipulation that Petitioner had a prior felony could have left the jury to speculate as to the nature of the past crime, which may have been more harmful for a defendant standing trial for an offense involving firearms. *See Bradley v. Birkett*, 192 F. App'x 468, 476 (6th Cir. 2006) ("Particularly because Bradley was charged with numerous crimes more serious than breaking and entering, it might have been sound strategy for his counsel to refuse to stipulate to a 'prior felony,' with no further information, and thus allow the information that the prior felony was only for breaking and entering."). Petitioner has also not shown how he was prejudiced by the admission of such evidence, particularly in light of the video evidence and overwhelming witness testimony of the night's events. *See Daniels v. Romanowski*, 2009 U.S. Dist. LEXIS 6328, at *18 (E.D. Mich. Jan. 29, 2009) (holding that counsel's decision not to offer stipulation of a prior conviction for larceny did not prejudice

8

petitioner in his trial for first degree murder). Given the doubly deferential standard of review, the Court concludes that the Michigan Court of Appeals did not unreasonably conclude that counsel's actions fell within acceptable standards for professionally competent assistance.

### 2.   Counsel's Failure to Object During Hurley's Cross-Examination

Hurley next claims that counsel should have objected when the prosecutor elicited, on cross examination, that Hurley never gave the version of events he offered at trial to the police. The Michigan Court of Appeals rejected this claim as follows:

> Defendant also claims that trial counsel provided ineffective assistance when he failed to object during the prosecutor's cross-examination of defendant. Defendant maintains that, although he had exercised his *Miranda* right to remain silent, the prosecutor asked defendant why he failed to tell police officers the version of events he offered at trial. According to defendant, counsel should have objected because this violated his due process rights.
>
> Defendant is correct that, "when a defendant chooses to exercise his right to remain silent, that silence may not be used against him at trial." *People v. Avant*, 235 Mich. App. 499, 509 (1999). Here, the prosecutor asked defendant, "Was there a reason you never told this string of events to the police or anyone else?" Defendant responded by explaining that, in his prior "dealings with police" they did not believe him and he does not like police officers. Defendant's surprisingly candid response aside, it appears that the prosecutor's question could have related to either the pre-*Miranda* and post-*Miranda* period of defendant's arrest, and was also clearly focused on statements defendant made to other witnesses that were wholly inconsistent with his trial testimony. But, were we to find the prosecutor's questioning improper, defendant has again failed to show prejudice. As discussed, there was ample evidence to establish defendant's guilt of the charged offenses and the testimony of various witnesses, the timeline established by the evidence, and the video images thoroughly disproved defendant's version of events. Accordingly, he cannot establish that, absent counsel's failure to object, the outcome of the trial would have been different.

*Hurley*, 2011 WL 2739453, at *3–4.

It appears that the Michigan Court of Appeals decided the claim based on Petitioner's inability to demonstrate *Strickland* prejudice, rather than on the deficient performance prong of the test. *Strickland* itself allows this manner of analysis: while the Supreme Court's opinion

discussed the performance prong before the prejudice prong, the Court clarified that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. In fact, the Court instructed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*.

Here, the state court reasonably found that the overwhelming evidence of Petitioner's guilt prevented him from showing with reasonable probability that counsel's failure to object to the prosecutor's question affected the outcome of the trial. As mentioned, many of Petitioner's actions on the night in question were recorded and presented to the jury on videotape taken from the Wal-Mart, the hospital, and during the traffic stop. Two witnesses testified that Petitioner brought the .45-caliber gun into Simmons' trailer, and observed him handling the gun. Simmons' neighbors heard gun shots and Simmons gave police a .45-caliber shell casing that she had found inside her trailer. Petitioner told O'Farrell that he didn't have the gun because he "just threw it out" or "just got rid of it." Thus, whether or not Petitioner shot Baldwin, there was strong evidence that he possessed the firearm, despite being a convicted felon, and that he concealed it.

Furthermore, Petitioner failed to obey numerous orders issued by the police, attempted to slip his handcuffs to the front of his body, required five officers to restrain him so that the police could photograph him, and spit on one of the officers, necessitating the use of a spit hood in order to execute the search warrant to take his blood. These incidents were apparently recorded and played for the jury. Police found an open Budweiser and a bottle of rum in the van, as well as box of ammunition purchased at Wal-Mart. Finally, there was no dispute that Petitioner was drinking that night; in fact, Petitioner himself admitted drinking beer, and testing showed that he

had a .13 blood-alcohol content level and exhibited clear signs of intoxication, including smelling of alcohol, slurred speech, poor coordination and red, watery eyes.

Given the evidence before the jury, Petitioner cannot establish with reasonable probability that his attorney's failure to object to the question about remaining silent affected the outcome of his trial. The conclusion of the Michigan Court of Appeals to the same effect was therefore reasonable.

### B.  Scoring of Sentencing Variables

Hurley's last claim of error, which Respondent failed to address, is that the trial court used inaccurate information in scoring two of the Michigan Sentencing Guidelines' offense variables ("OV"). (*See* Pet. at 9.) Hurley argues that the trial judge used inaccurate information in scoring OV-3, physical injury to a victim, Michigan Compiled Laws § 777.33, and OV-19, interfering or attempting to interfere with the administration of justice, Michigan Compiled Laws § 777.49(c).

A claim that the state trial court incorrectly scored or calculated the petitioner's sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007) (affirming district court's denial of a habeas petition that challenged the trial court's application of Michigan's sentencing guidelines); *Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) ("[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations."). It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see*

11

18 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

A criminal defendant does, however, have a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process"). "A sentence must be set aside where the defendant can demonstrate that false information formed part of the basis for the sentence. The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. 2005) (quoting *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988)). Petitioner has not made such a showing.

As to OV-19, Hurley says that the conduct giving rise to that offense occurred after his conduct giving rise to the firearms charges and thus, it should not have been considered in his Sentencing Guidelines for the firearms charges. A review of Hurley's Petition, which incorporates his appellate brief on the same argument (Pet. at 9), clarifies that his claim arises from two purportedly conflicting Michigan Supreme Court cases interpreting Michigan Compiled Laws § 777.49(c). (App. Br. at 22 (citing *People v. Barbee*, 681 N.W.2d 248 (Mich. 2004); *People v. McGraw*, 771 N.W.2d 860 (Mich. 2009)). As noted above, "[i]ssues of state law cannot form the basis for habeas relief." *Landrum v. Mitchell*, 625 F.3d 905, 913 (6th Cir. 2010)

12

(citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Estelle*, 502 U.S. at 67). Hurley does not argue that either of the two Michigan Supreme Court decisions he cites amounted to an unconstitutional interpretation of the Sentencing Guidelines; rather, he argues that the Michigan Supreme Court's interpretation of OV-19 in the case *People v. Barbee*, 681 N.W.2d 248 (Mich. 2004) should have governed the trial judge's application of the Guidelines. (*See* Pet. at PageID 43.) Indeed, that is how the Michigan Court of Appeals interpreted the issue when it disposed of the claim by citing a Michigan Supreme Court decision interpreting OV-19 that was pending at the time Hurley filed his appeal. *See Hurley*, 2011 WL 2739453, at *4. Thus, Hurley asks the Court to review a "state-court ruling[] on [a] state-law question[]." *Burger v. Woods*, 515 F. App'x 507, 509 (6th Cir. 2013). This claim is not cognizable in federal habeas review. *See Preston v. Caruso*, 238 F.3d 423 (6th Cir. 2000) (unpublished).

With respect to OV-3, Hurley argues that there was no record evidence linking Hurley's possession of the gun to Baldwin's gunshot wound to the leg. The Michigan Court of Appeals found that "circumstantial evidence clearly permits the inference that defendant may, indeed, have fired the weapon," causing Baldwin's injuries. *Hurley*, 2011 WL 2739453, at *4. The Court of Appeals based its finding on the evidence presented at trial, including that it was Hurley who initially produced the gun from the white van, testimony that both Hurley and Baldwin were playing with the gun together, and testimony that Hurley disposed of the gun after the shooting. *See id.* Hurley has not shown that any of this information was materially false or constituted "misinformation of a constitutional magnitude" in violation of his right to due process. Habeas relief is therefore not warranted on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Before Hurley may appeal this Court's decision, "a circuit or district judge" must issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability. Nonetheless, the Court finds that an appeal could be taken in good faith and therefore, if Hurley chooses to appeal the Court's decision, he may proceed *in forma pauperis*. 28 U.S.C. § 1915(a)(3).

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Hurley's Petition for a Writ of Habeas Corpus, DENIES Hurley a Certificate of Appealability, and GRANTS leave to appeal *in forma pauperis*.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: January 5, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 5, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson

14